UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| BRANDON CALLIER, <br><br> Plaintiff, <br><br> v. <br><br> INSURIGO INC INSURANCE SERVICES, a Texas Corporation, <br><br> Defendant. | § § § § § § § § § § § § §    EP-23-cv-00433-KC |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**PARTIES**

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all the calls, in this case in El Paso County, Texas.

2. Defendant INSURIGO INC INSURANCE SERVICES ("Insurigo") is a corporation organized and existing under the laws of Texas and can be served via registered agent Asima Shamim, 302 High Point Drive, Murphy, Texas 75094.

**JURISDICTION AND VENUE**

3. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. ¶ 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

4. This Court has general personal jurisdiction over Defendant because Defendant is a Texas corporation.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services

1

directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when Plaintiff received every single unauthorized call from Defendant that is the subject matter of this lawsuit.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

6. In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

7. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

8. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

9. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

10. Separately, the TCPA bans telemarketing calls without a do-not-call policy available

upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

11.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

12.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

13.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

14.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

15.    *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

16. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

17. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

18. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

19. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry ("DNC") in December 2007.

20. Defendant offers various insurance products.

21. Plaintiff received at least seventeen (17) unauthorized calls to his personal cell phone ending in 4604 from Defendant from November 6, 2023, to November 28, 2023, soliciting health insurance.

22. Each of the phone calls received by Plaintiff came from a spoofed phone number beginning 915-755 or 915-751.  The phone calls were spoofed to trick Plaintiff, and other consumers, into believing the phone calls were local.

23. Each of the phone calls received by Plaintiff with spoofed caller identification was made with auto-dialing spoofing technology.  The auto dialing spoofing technology is a robocall under the Telephone Consumer Protection Act.

24. On November 6, 2023, Plaintiff received a phone number displaying 915-755-2955 on the caller identification.  Plaintiff answered the phone and was solicited for health insurance.  Plaintiff responded with, "I'm not interested.  Please don't call back."

25. Every subsequent phone call was an intentional knowing and willful violation.

26. On November 15, 2023, Plaintiff received a phone number displaying 915-755-1674 on the caller identification.  Plaintiff answered the phone and was solicited for health insurance.  Plaintiff responded with, "I'm not interested.  Please don't call back."

27. On November 22, 2023, Plaintiff received a phone number displaying 915-755-0825 on the caller identification.  Plaintiff answered the phone and was solicited for business funding.  Plaintiff responded with, "I'm not interested.  Please don't call back."

28. On November 28, 2023, Plaintiff received a phone call that displayed 915-755-0080 on the caller identification.  Plaintiff answered the phone and was solicited for health insurance.

29. Plaintiff was annoyed at having received so many spoofed phone calls and having his do-not-call requests ignored, so Plaintiff played along to discover who was spoofing these phone calls.

30. Plaintiff was connected to a representative who emailed Plaintiff a representation agreement via Panda Doc.  The representation agreement was from Defendant Insurigo.

31. Every call at issue in this Complaint is a solicitation call marketing health insurance.

32. On November 3, 2023, Plaintiff received a phone call that displayed 915-751-8687. Plaintiff answered the phone and was solicited for health insurance. Plaintiff said he was not interested and asked to not be called again.

33. Each and every phone after the November 3, 2023, phone call was a knowing and willful violation.

34. On November 10, 2023, Plaintiff received a phone call that displayed 915-751-7591. Plaintiff answered the phone and was solicited for health insurance. Plaintiff said he was not interested and asked to not be called again.

35. On November 16, 2023, Plaintiff received a phone call that displayed 915-751-7970. Plaintiff answered the phone and was solicited for health insurance. Plaintiff said he was not interested and asked to not be called again.

36. On November 21, 2023, Plaintiff received a phone call that displayed 915-751-1026. Plaintiff answered the phone and was solicited for health insurance. Plaintiff said he was not interested and asked to not be called again.

37. On December 1, 2023, Plaintiff received a phone call that displayed 915-751-1591. Plaintiff answered the phone and was solicited for health insurance. Plaintiff said he was not interested and asked to not be called again.

38. On December 2, 2023, Plaintiff received a phone call that displayed 915-755-7366 on the caller identification. Plaintiff answered the phone and was solicited for health insurance.

39. Plaintiff was annoyed at having received so many spoofed phone calls and having his do-not-call requests ignored, so Plaintiff played along to discover who was spoofing these phone calls.

40. Plaintiff was connected to a representative who emailed Plaintiff a representation agreement via Panda Doc. The representation agreement was from Defendant Insurigo

41. Table A shows the calls sent to Plaintiff by Defendant Insurigo from 915-755.

TABLE A (915) 755 Phone Calls:

| Number | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 11/06/2023 | 2:01 PM | 915-755-2955 | Do Not Call Request |
| 2. | 11/09/2023 | 12:10 PM | 915-755-3085 | |
| 3. | 11/15/2023 | 1:51 PM | 915-755-1674 | Do Not Call Request |
| 4. | 11/22/2023 | 12:39 PM | 915-755-0825 | Do Not Call Request |
| 5. | 11/24/2023 | 8:13 AM | 915-755-7231 | |
| 6. | 11/24/2023 | 3:06 PM | 915-755-6346 | |
| 7. | 11/24/2023 | 4:01 PM | 915-755-6714 | |
| 8. | 11/28/2023 | 9:28 AM | 915-755-0080 | Sent contract from Insurigo Insurance |

42. TABLE B (915) 751 Phone Calls:

| Number | Date | Time | Caller ID | Notes |
|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| 1. | 11/03/2023 | 1:21 PM | 915-751-8687 | Do Not Call Request |
| 2. | 11/09/2023 | 12:10 PM | 915-751-7591 | |
| 3. | 11/10/2023 | 9:54 AM | 915-751-0988 | Do Not Call Request |
| 4. | 11/16/2023 | 1:41 PM | 915-751-7970 | Do Not Call Request |
| 5. | 11/20/2023 | 10:33 AM | 915-751-6004 | |
| 6. | 11/21/2023 | 10:46 PM | 915-751-1026 | Do Not Call Request |
| 7. | 11/30/2023 | 3:42 PM | 915-751-2570 | |
| 8. | 12/01/2023 | 9:28 AM | 915-751-1591 | Do Not Call Request |
| 9. | 12/02/2023 | 12:54 PM | 915-751-7366 | Sent contract from Insurigo |

43. Plaintiff did not have a preexisting relationship with Defendant, had never been a customer of Defendants nor had ever applied for insurance or any other products with Defendant.

44. Defendant placed multiple unauthorized phone calls to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

45. Spoofing caller identification is a Deceptive Trade Practice Under Texas Law.

46. No provision of the Telephone Consumer Protection Act or any Texas Law permits the spoofing of caller identification.

47. Plaintiff infers an ATDS was used because:

   a. Plaintiff had no preexisting relationship with Defendant and Defendant had no reason for having Plaintiff's phone number in their system.

   b. ATDS spoofing technology explains why the phone calls came in with various numbers beginning with 915-755-XXXX and 915-751-XXXX.

   c. Defendant is a Dallas-based company with area codes that begin with area code 214.

   d. Defendant did not ask for Plaintiff by name in any of the phone calls.

   e. The phone calls could have reached anybody with a 915 area code and were not directed to Plaintiff.

48. No emergency necessitated any of the alleged calls.

49. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

50. Defendant's calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

51. Defendant's calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

52. Defendant's calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

53. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

54. The calls were to Plaintiff's personal cell phone ending in 4604 which he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### COUNT ONE:

### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

55. Plaintiff realleges and incorporates the preceding paragraphs 1-54 as if fully set forth herein.

56. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

57. Defendants and/or their agents, called Plaintiff's private residential telephone which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the alleged calls, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

58. Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(c)(3)(F) by Defendant's calls described above, in the amount of $500 per call.

59. Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

60. Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:
**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A)(iii))**

61. Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1-54.

62. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by making non-emergency telemarketing robocalls to Plaintiff's cellular telephone numbers without his prior express written consent

63. Plaintiff was statutorily damaged at least seventeen (17) times under 47 U.S.C. § 227(b)(3)(B) by Defendants by the telephone calls described above, in the amount of $500.00 per call.

64. Plaintiff was further statutorily damaged because Defendants willfully or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(b)(3)(C) for this willful or knowing violation.

65. Pursuant to 47 U.S.C. § 227(b)(3)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without prior express written consent of the called party.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the Defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.     An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1,500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against Defendants for eight (8) calls;

E.     An award of $1,500 per call in statutory damages arising from the TCPA §227(b) intentional violations jointly and severally against Defendants for eight (8) calls;

F.     An award to Mr. Callier of damages, as allowed by law under the TCPA;

G.     An award to Mr. Callier of interest, and costs, as allowed by law and equity;

H.     Such further relief as the Court deems necessary, just, and proper;

December 4, 2023,

Respectfully submitted,

_____

Brandon Callier
Plaintiff, Pro Se
1490A George Dieter Drive #174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com